May it please the court and counsel, my name is Brad Maxa. I represent Lloyd Taylor, who is the assignee of Mr. Green, the insured of Sentry Insurance. I'd like to reserve five minutes for rebuttal, please. All right, please watch your clock. This case involves a fairly common insurance loss scenario. The insured negligently injures somebody and is facing catastrophic liability. In this case, the expected judgment was some $900,000 more than policy limits. The insurance company offers to settle for policy limits, and the claimant says no. The question is, what is the insurance company's duty in that situation? Sentry says that the only duty an insurance company has under this scenario is to tender its policy limits. And if those limits are tendered and the claimant rejects that offer, they can't be held liable for bad faith. That seems to be the law. That if you're an insurance company and you issue a policy for $25,000 and you say here, take the check for the entire policy limits, that's the end of your responsibility. It might be the law somewhere, but it's not the law in Washington. All right. What case do you rely on that supports that statement you just made? You stole my question. What case do you say supports that? The main case, and I'll quote it from you, is Hamilton v. State Farm, Washington Supreme Court. Hamilton v. State Farm doesn't apply to this particular situation. Hamilton State Farm, they did not give the policy limits. They did not give the policy limits to begin with. They had less than given the policy limits, so then they had a duty to come out and see if they couldn't settle it to the extent of the policy limits. Here we've got the policy limits extended. We do have the policy limits extended, but I don't think you can ignore the court's statement. Certainly the facts in Hamilton were different in this case, but the court in Hamilton specifically said that when there is undisputed liability, which is what we have here, it is the affirmative duty of the insurer to make a good-faith attempt to effect settlement. So are you suggesting then that the insurance company not only has to tender their whole policy limits, but they have to go try to negotiate a particular claimant to a particular sum that they're not even going to defend their insured about? Absolutely. Well, so at that point they are negotiating his liability that he pays out of his own personal pocket, and they're supposed to do that? Absolutely. And when they do that, they're going to be sued for bad faith because they have put him in a position to pay stuff he never wanted to pay. Here's the source of it. And the problem is inherent in this arrangement is the insurance company retains the complete control over settlement negotiations. They have that right in their contract. Now, just a minute. They retain complete control over settlement negotiations. Once they extend the policy limits, they really don't care what they do on policy, on settlement. Exactly. Exactly. It doesn't concern them. It concerns their insured. They'd like to keep it as low as they can, but there's nothing they can do about it. That's exactly the problem. And I guess my biggest problem is truck insurance change versus Vanport Homes seems to very much apply in this particular situation. And in that, it's only when the insurance company does absolutely nothing. In the facts of this particular case, they not only extended the policy limits in the first place, they extended the policy limits again when your client's counsel asked for them and said he had the right to get them, though now you dispute that he was never authorized to do that. They sent a check to him. Not only that, but they came in and every time anybody came, they again extended the policy limits and checked with your particular client about what they should do. So much is to suggest that they extended it again when plaintiff got new counsel. The first time a demand was made, they extended the policy limits a second time after they'd already paid them out. That's not true. The first time the new counsel came in, he offered to settle for policy limits. They completely ignored him. He came in a couple months later and said this case will go away for 12-5. They completely ignored him. It wasn't until 14 months after new counsel came that they re-extended the policy limits. So as a factual matter, that's not true. When was the first demand made after he got new counsel? The first demand was made before filing suits. When was it? It was November. I think the letter was November 6th. Rod Ray, the plaintiff's attorney, specifically testified that he believed that he offered to settle this case for policy limits. Now, Century disagrees with that. They say, wait a minute, there's no documentation of that. But that's a clear question of fact. He offered to settle the case for policy limits. They ignored him. In April, Rod Ray again to defense counsel said, you know what, we think this case can go away for 12-5. Well, at this point, they'd already paid him out once. You'll admit to that. Wrongly, yes. That is definitely correct. Now, here's the source of the duty, because this is really a duty question. Now we're getting into whether they breached the duty or not. Where does this duty come from? I read Hamilton, First State, Truck. They all say this duty is there. The Washington Patent and Jury Instructions say this duty is there. But the real source of the duty is the fundamental principle of Washington law, comes from Tank v. State Farm, that the insurance company has to give equal consideration to the insured in all matters. We cite in our brief. Century cites in their brief. You have to give equal consideration to the insured in all matters. What does that mean? Well, in this context, here's the problem. The interest of the insurance company and the interest of the insured are directly in conflict. And you said it yourself. The insurance company, hey, once we tender the limits, we don't care. Well, it isn't exactly we don't care, because once the limits were tendered and he didn't accept them, not only did they extend them again to all of those who wanted them, but they gave him counsel. After tendering the limits, they gave him counsel to defend him in the underlying action. But what they didn't do, and again, now we're getting away from duty and into facts, but what they didn't do is make any realistic effort to try to settle the case with the claimant, with Mr. Taylor. Suppose that he just filed an interpleader action and said, hey, these people are fighting over this money. That's one option? We don't know. We're on the hook for $25,000. Here it is. We're out. That was one of the options, and I think I list out a whole different list of options. All the century adjusters told us options. The main one that I come back to is the century adjuster that said, you know what, we have this great mediator up in Washington, Judge Kaiser, who's a well-known mediator in this area. He's wonderful. When we get into mediation, we settle these things 99 out of 100 times. We could have interpleaded. We could have at least asked him what it would take to settle the case because what he told the adjuster, what Mr. Taylor said was, you know what, I don't care who gets the money. I just don't want my stinking first attorney to get a dime. So if they would have explored that a little bit, if they would have done anything else, the inference is they could have got this case settled. They just didn't have the incentive to do it. They tended to the limits. The guy said no. Who cares? But Mr. Green's interests, which they have to give equal consideration to, are completely different. Why is Green not here? He assigned his claim to Mr. Taylor. So how was Green harmed through all of this? Well, Green was harmed because the case wasn't settled when it could have been settled. But what's the outcome? I mean, I don't quite understand. You're suggesting it could have been settled for $250,000 opposed to $900,000? Well, first of all, Where's the harm? Harm is an essential element. There's no question in my mind. Or injury, whatever. Yeah, harm, causation, whatever you want to call it. That's where, I see my clock hasn't started here. I didn't see when I started. That's how much you've got left. Oh, I have 15 minutes left. This is great. You have six minutes left. Huh? It just says 15 on mine. Okay, six minutes? Okay, thank you, Your Honor. It's 5.58. Okay. That is where this issue of churning down the limits comes into play. Because if the claimant is never going to settle this case under any circumstances, yeah, there's no causation. Under Washington law, however, harm is presumed. When the insurance company acts in bad faith, harm is presumed. And so that's our starting point. And the courts have said it's almost an impossible burden. It's essentially directing verdict in favor of the claimant in this situation. Here, the duty that you allege they breached as a duty, I think you used the term aggressively try to settle the case. Certainly those are my flowery words. There's two duties, one broad, one general. The broad one is to exercise good faith in the attempt to settle the case. Let me ask you a question. When they settled this case, your client and Greene, was Greene given a covenant not to execute? That is correct. So what is this damage at all? Well, it's funny, Your Honor. I made that same argument back in 1994 in Safeco versus Butler, representing the insurance company, and I lost. The court said, you know what? We are going to bless this proceeding. Tell me the case. Safeco versus Butler. And what's the site? It's in my brief. I think it is 134. Okay. It's also reaffirmed in Mutual of Enumclaw, 161 Washington 2nd, where they blessed this arrangement because, yeah, the insurance company said, well, Mr. Greene really isn't injured. And they said, you know what? We're not going to force poor Mr. Greene to go through the trauma of a trial and lose his house and declare bankruptcy just so we can then turn around and sue the insurance company. So, yes, we are standing in the shoes of Mr. Greene. He was harmed because this case could have settled and wasn't. There's a presumption of harm, but even if there's no presumption, I've given you the evidence here that indicates that if the insurance company had done anything more, there's an inference that this case could have settled. Mr. Taylor a couple different times told Mr. Albertson, one of his early attorneys, and Mr. Ray, you know what? Let's just settle this case. I don't care if DSHS gets all the money. The inference has to be they could have settled for less. For less than $25,000? For less than $900,000. Absolutely. I think the strong inference, because Mr. Taylor said it three different times, once to the adjuster, twice to his attorneys, as long as my attorney doesn't get a dime, I don't care who gets the money. And so I think the strong inference is, and again, we're here on summary judgment, the strong inference is that if something could have been done with that attorney lien, which is $8,000, he would have settled for policy limits. And then here's where the second duty comes in, and it comes from the truck case. It specifically says there's a duty to negotiate in such a manner that you get the best settlement terms available. Had they done that, they might have found out that, in fact, Mr. Taylor, as long as that lien is taken care of, he would have settled the case. Do you think Mr. Green, out of his own pocket, would have paid $8,000 to get rid of a $900,000 liability? I think there's a strong inference of that. Well, I don't think that's necessarily in this record. Did you want to save some time? Am I done? Okay. Thank you. If it pleases the Court, Counsel, my name is Mark Beard. Together with Mr. Steen, we represent the appellee in this matter, Century Insurance. This case came on before the district court with three motions for summary judgment, one filed by the defendant, two separate motions filed by the plaintiff. Although the parties may disagree as to the legal significance of the facts, as the law applies to the facts, certainly at the time that those motions were filed, both parties believed that there was no genuine issue of material fact and that the case was ripe for summary adjudication. That's still the case today. There's no question that Century tendered its policy limits to the plaintiff on several occasions. The first time it tendered, the plaintiff accepted the tender of $25,000. But that was sort of a conditional acceptance. The plaintiff's attorney, Mr. Watson, then reiterated his demand for our limits, which we again tendered and this time paid out, and which the plaintiff's counsel held for approximately seven months, until which time he advised us that there was some problems and that he was returning the check to us along with his lien for $800,000. Oh, by the by, DSHS has a $200,000 lien on Mr. Taylor's recovery. When Century got the return check in December of 2002, it sent a letter to the claimant, Mr. Taylor, again re-tendering its limits and saying that before we pay these out, you will have to sign a release of our assured Mr. Green and we will pay these limits to DSHS and your formal attorney. We never heard back from that letter. After a couple weeks, Century telephoned Mr. Taylor to find out what was going on. The exact substance of that telephone conversation is not 100% clear. Suffice it to say is that Mr. Taylor disagreed with the distribution because he wasn't going to get a dime out of it and refused to sign the release of Mr. Green. The Century adjuster then that same day, December 21st, sent a letter to Mr. Taylor and also to Mr. Watson and DSHS saying that Mr. Taylor would not agree to the distribution of the $25,000 because he would not sign a release and invited all parties to contact Century to see if they could work out a compromise. No one called, not DSHS, not Mr. Watson, not Mr. Taylor. Instead, about 10 days later, Mr. Watson sued his now former client in Pierce County Superior Court over his attorney's fees, trying to collect his attorney's fees. Mr. Taylor obtained a second attorney, Dan Albertson, and the matter proceeded to litigate. DSHS was brought into that lawsuit. They set up their assignment. All the legal issues were there in front of Pierce County, the judge. Mr. Watson took a setback in that proceeding and had some sanctions awarded against him and filed a dismissal. Mr. Albertson assumed, as presumably did Mr. Taylor, that Mr. Watson had lost stomach for this legal fee fight and the matter was dropped. Unbeknownst to Albertson or Mr. Taylor, Watson threw in with the Attorney General's Office of the State of Washington to go about collecting the $25,000 and their fees. Over the course of six months in correspondence back and forth with Century, including sending them the assignment, the Assistant Attorney General for the State of Washington prevailed upon Century to pay it its policy limits. Century paid those limits to DSHS. And when they paid the limits to DSHS, they didn't get a release from Mr. Taylor of Mr. Green. And as we've subsequently indicated, that was a mistake. Then, as the statute of limitations begins to run, Mr. Taylor presents himself at the office of Mr. Ray and says, I know that by this time, I know that Mr. Green does not have any assets to go after, but if you file this lawsuit, I will share with you your statutory attorney's fees that you will be able to get back from DSHS. And so Mr. Ray files suit, Century appears, defends without a reservation of rights, points counsel for Mr. Taylor, and they immediately set up the assignment and move for summary judgment in defending Mr. Green. After some conversations back and forth between counsel, it becomes apparent that there's a problem with that assignment. The folks at Century review it, determine a mistake's been made, reinstate the $25,000 limits in January, and I think we're in January, about 2005 now, tender those limits, which is rejected. So did you ever pay, actually pay the $25,000? Twice, Your Honor. Once to DSHS and once in partial satisfaction of the judgment in this action here. So we reinstated our limits and we paid them out once they took this. $50,000 now. Yes. We then, once the lawsuit was filed, there was an initial law firm involved. Because they had given legal advice to Century involving whether or not they should pay their limits to DSHS, Century believed that there was a potential conflict between that law firm and their assured Mr. Green. They appointed new counsel for Mr. Green with instructions to defend him, sort of almost pursuant to the tank guidelines, well in accordance with the tank guidelines, which are not necessarily applicable here. That case, depositions were taken. Mr. Green was aggressively defended. And then a mediation was held in which Mr. Green was represented. The parties were there. And the demand to Mr. Green was not we want your $25,000 limits or we want $100,000. The demand to Mr. Green was we want a million dollars or in exchange we'll take a confession of judgment and your bad faith action against Century. The attorney that Century hired for Mr. Green recommended to Mr. Green that he take the satisfaction, you know, sign the satisfaction of judgment. Mr. Green was reluctant to do so. He thought that there was something not right about that. And he literally waited until the eve of trial some six months later before he eventually signed the satisfaction of judgment. And then that brings us to the instant action in which Mr. Taylor's, Mr. Green's assignee brought suit against us. What they argue for, your honors, is the existence of a new duty in the state of Washington and the existence of that duty is a question of law. It's not a jury question. In two motions for summary judgment, a voluminous motion for reconsideration, and over 800 pages of briefing, the appellant has not produced a single Washington case or a case anywhere else in the other 49 states to support his claim that Century had a duty to negotiate above its policy limits in the claims stage with Mr. Taylor. And there's a reason why the appellant couldn't find that case and there's a reason why Judge Layton couldn't find that case when he went looking for it, and that is the case doesn't exist. The duty doesn't exist. And so what you're being asked to do is to create a new duty under Washington law. In regards to the presumption of harm that counsel referred to, there's an important aspect of that that should be pointed out. The presumption of harm arises only after the bad faith has been proved by a preponderance of the evidence, and that's what the Dan Paulson case states. You just don't get to allege it. You have to prove it by a preponderance of evidence, and once the one side has proven it by a preponderance of evidence, then the presumption does exist which the defendant can rebut. In this case, we respectfully submit that they haven't proved anything in terms of the duty of bad faith, and even if they have, the facts regarding what Mr. Taylor told his attorneys show that at no time did he ever authorize any of his attorneys, neither Mr. Watson, Mr. Albertson, Mr. Ray, Mr. Kilpatrick, to settle for any amount of money, not $25,000, not $100,000. His testimony is set out at ER-299 and ER-300. He just flat out says, the question to him is, so am I correct in understanding that no time before Dick brought suit for you, did you ever authorize anyone to settle your claim completely for any amount of money? Answer, no, I didn't. So we have the plaintiff's testimony in front of the trial court and this Honorable Court that he never authorized any of his attorneys to settle for any amount of his money. We have then the suggestion that somehow Mr. Ray offered to settle the case for policy limits before he filed suit, and the court can draw its own conclusions from the facts in front of the court. I draw your attention to ER-274, which is the letter that Mr. Ray sent to the century adjuster, Mr. Garcia, in which he claims that he confirmed that he had left a telephone message with a policy limits demand. The letter speaks for itself and it makes no mention of policy limits demand, $25,000 or settlement in whatever form. Suppose he could show that there had been an offer to settle for $25,000 and no response. Well, you're on the right track, Your Honor. Always good to make the judge feel good. I know, I know, it's like my nightmare, Your Honor. I think having spent the last couple of weeks reading and re-reading the law on this, it's certainly not clear in terms of the claims context if someone makes a policy limits demand and you fail to respond in the claims stage to that response. Clearly, in the case of litigation, when the parties are engaged in litigation and there's an excess exposure and there's a limits demand with a time limit made or some sort of trip wire where if you don't accept it, we're never going to offer it again, we're going to go to trial, and the insurance company places its own interest ahead of the assured, you bet, Judge, that would be bad faith. In this instance, where it's still in the claims stage, where there's no reservation of rights, where there's no suggestion that there's a take-it-or-leave-it offer, this is the final time, and frankly, Your Honor, the evidentiary record is devoid of any substantive or compelling evidence or probative evidence that, in fact, that offer was made. We think we acted reasonably. Okay. All right. Well, there's one just sort of quick note I would make, and that is something that I overlooked in the briefing, and it's my fault, but that, as Your Honors are well aware, motions for summary judgment are considered de novo. Motions for reconsideration are considered for abuse of discretion. We would, you know, respectfully submit that you look at the materials that they submitted to the court on the de novo basis, but the materials that were submitted to Judge Layton on the motion for reconsideration, please look at our argument, but those should be reviewed on the abuse of discretion. Thank you. Thank you, Counsel. How much time do I have left, Your Honor? It's not working for you? It didn't the first time. Okay. Right now it says 236. I apologize. This is new. We're looking at the new technology. I should have mentioned something at the very beginning when it wasn't ticking down on me. Just wanted to have more time, right? That's exactly right. I can talk all day. Just give us the business for as long as you want.  Well, that's good. Let me start at the end, because no matter what you do with our primary argument, that there is a duty to attempt to settle the case, this case has to be remanded on the good old-fashioned duty to settle within policy limits. Because there is a clear duty, and if Hamilton stands for anything, it's this. If you have a chance to settle that case for policy limits and there's an excess verdict potential, you've got to do it. But didn't they try to do it? No. That's the whole point. They made an offer to settle, and it was turned down. But when Mr. Ray was hired, and again, this is clear in the record, and I'll just read it to you, Mr. Ray said, I think this does confirm that we made a policy limits demand before this letter went out. And that's what I know I said in my phone call to them. That's at ER 147. And then further on, he says, Mr. Ray, do you understand correctly that you believe that you made a policy limit demand upon Century Insurance prior to filing the lawsuit? Answer, I believe that to be the case. Didn't Century actually end up paying $50,000? Yes, but that's not the whole point. The point is they had a chance. They paid $50,000, but they didn't get the chance to release Mr. Green from liability. They did. They ultimately got that release. No. Mr. Green is subject to an $850,000 judgment. Now, he assigned that claim to Mr. Taylor, but we stand in his shoes. He's got an $850,000 judgment against him. Regardless, Century would only have to pay $25,000 of it, and they paid $50,000. No, well, that's where bad faith comes in. If you act in bad faith, then you have to pay the full judgment. I didn't, you know, to be honest with you, when I read your briefs and went over the case, I didn't understand your theory. The case was that we could have settled Mr. Green's liability for $25,000 because an offer had been made and he was willing to accept it. I do, in fact, argue it both in the main brief and in the second brief. In our reply brief, and again, I emphasize it again, $25,000 offer, but then four months later he said, we can get this done for $12,500. So they had a clear opportunity to get this thing settled within policy limits, and they didn't. So no matter what the duties are with regard to the duty to negotiate, they breached that duty. We went on that. But let's go back. Let's talk about authority. I was waiting to hear Century to give any authority that says giving equal consideration to your insured's interest is tendering limits and then sitting back and doing nothing else after that. There's absolutely no authority anywhere that says that. The authority we have is based on bedrock insurance law principles. You have to give equal consideration to your insured's interest. And that means trying to settle the case. Try to settle it within policy limits if you don't want to try to negotiate above limits. But you've got to at least try. You owe Mr. Green your insured at least that much. Because if you don't try, okay, sure, you're only liable for $25,000. He's liable for $850,000. All right. Well, thank you, Counsel. Taylor v. Century Group to be submitted.
judges: Wardlaw, Paez, Smith N. R.